Fabricant, J.
INTRODUCTION
This action presents claims under G.L.c. 93A and c. 176D arising from the defendants’ handling of the plaintiffs’ claims for underinsured motorist benefits. Presently before the Court are the plaintiffs’ motion for partial summary judgment as to liability of each defendant, and cross motions of two defendants for summary judgment. For the reasons that will be explained, the plaintiffs’ motion will be denied, defendant Jim Beam Brands Worldwide, Inc.’s (“Jim Beam”) cross motion will be allowed, defendant Gallagher Bassett Services, Inc.’s (“Gallagher Bassett”) cross motion be allowed in part and denied in part, and summary judgment will be entered against the plaintiffs as to certain of the claims against defendant National Union Fire Insurance Company (“National Union”).
BACKGROUND[1]
The plaintiff Kenneth Murphy was an employee of defendant Jim Beam. In the course of his employment, he drove an automobile that was registered in Massachusetts and leased by Jim Beam from an entity known as Emkay, Inc. On September 1, 1994, while driving that vehicle in the course of his employment, Murphy was involved in a collision with another vehicle. Murphy received workers compensation benefits for his medical expenses and lost wages, and brought a personal injury action against the other driver. His wife, Donna Murphy, brought a claim for loss of consortium.
The other driver’s insurance coverage for the occurrence was limited to $100,000. In May of 1997, the plaintiffs settled their claims against the other driver for his policy limit, allocating $50,000 to each of them. They then sought to recover their remaining damages from underinsured motorist coverage under a motor vehicle endorsement to a comprehensive general liability insurance policy issued by the defendant National Union to Jim Beam’s parent company, American Brands,' Inc. Gallagher Bassett administered the plaintiffs’ claims under a contract with National Union’s parent entity, AIG Risk Management, Inc. (“AIG”), to provide claims administration and adjustment services. That contract referred to Jim Beam as a “client” of AIG.
The insurance policy addresses the topic of under-insured motorist coverage only in a two-page endorse *752 ment setting forth liability limits for various types of coverage. The endorsement states limits of two million dollars per person and per occurrence for “Automobile liability,” and states the same limit “per accident” for “Uninsured/Underinsured Motorist.” As to “Personal Injury Protection,” the endorsement states “minimum limits as required by state statute.” Other than stating these policy limits, the endorsement states no terms or conditions of the underinsured motorist coverage, nor does any other part of the policy state any terms or conditions of underinsured motorist coverage. A separate endorsement to the policy gives the insured— Jim Beam, for this purpose — a self-insured retention of $250,000 “for all lines, per occurrence.”
The parties did not reach agreement on the value of the plaintiffs’ claims, and in August of 2000 the plaintiffs demanded arbitration.[2] National Union agreed, and the plaintiffs and National Union entered into an arbitration agreement providing that the arbitration panel would decide the total amount of the plaintiffs’ damages, without regard to any amount already received, and that the settlement with the other driver would then be deducted from the award. After depositions, the case proceeded to an evidentiary hearing before a panel of three arbitrators beginning in May of 2001. On July 9, 2001 the panel awarded a total of $1,610,000 to the two plaintiffs, $1,260,000 to Kenneth Murphy and $350,000 to Donna Murphy. On August 6, 2001, Gallagher Bassett paid the Murphys $1,510,000, the amount of the award less the $100,000 previously received on behalf of the under-insured motorist.
The plaintiffs brought this action in October of 2001, and amended their complaint in June of 2002. The plaintiffs allege that each of the defendants committed various wrongs in the course of handling the plaintiffs’ claims. The wrongs claimed fall into two general categories: first, the plaintiffs claim that the defendants committed various practices prohibited by G.L.c. 176D, §3(9), particularly by failing to make a reasonable offer to settle the claims. Second, the plaintiffs allege that the defendants refused to provide the plaintiffs with a copy of the policy, and misrepresented its terms. The particular misrepresentations claimed relate to whether the policy included standard Massachusetts underinsured motorist coverage provisions, particularly provisions for arbitration and for offset of amounts collected from the underinsured motorist; the plaintiffs contend that the defendants falsely represented that the policy contained these terms, although it did not. As a result, the plaintiffs allege, they were misled into requesting arbitration, rather than pressing their right to jury trial,[3] and were also misled into agreeing to offset the amount previously collected.
These contentions are set forth in the ten-count amended complaint, as follows. Counts I, II, and III allege, with respect to the three defendants respectively, that each defendant violated G.L.c. 93A and c. 176D by “failing to effectuate prompt, fair and equitable settlement of the Plaintiffs’ claims as liability was undeniably clear,” by “compelling the plaintiffs as insureds to institute litigation to recover amounts due by offering substantially less than the amounts ultimately recovered,” and by “failing to conduct a reasonable investigation.”[4] Counts IV, V, and VI allege, with respect to the three defendants respectively, that each defendant violated G.L.c. 93A and c. 176D by “misrepresenting pertinent facts or insurance policy provisions relating to the coverages at issue.” Counts VII, VIII, and IX allege, with respect to the three defendants respectively, that each defendant violated G.L.c. 93A and c. 176D by “misrepresenting the insurance policy providing underinsured motorist benefits to the plaintiffs through making or causing to be made statements which misrepresent the benefits, advantages, conditions, or terms of said insurance policy.” Finally, Count X alleges that National Union violated G.L.c. 93A and c. 176D in that it “misrepresented that its policy provisions contained standard terms and conditions that required that the Plaintiffs’ $100,000 settlement with the third-party tortfeasor be deducted from the Arbitration Award,” that as a result of such misrepresentation the parties’ arbitration agreement provided for offset, and as a result, National Union was unjustly enriched by $100,000.
DISCUSSION
The plaintiffs now move for summary judgment as to liability on all counts of the complaint, as against all defendants. They contend that the undisputed facts, as reflected in their evidentiary submissions, establish beyond any genuine dispute both the unreasonableness of the defendants’ settlement posture, and the defendants’ alleged misrepresentations of the policy terms. In considering this contention, the Court has reviewed the evidentiary materials submitted by all parties in the light most favorable to the defendants. Considered in this light, those materials establish the existence of genuine factual disputes. Accordingly, the Court cannot conclude that the plaintiffs are entitled to judgment as a matter of law as to any of the claims.
Defendant Gallagher Bassett responds with a cross motion for summary judgment that, while nominally addressed to all counts, focuses on the legal basis for the misrepresentation claims; it argues, in essence, that these claims fail regardless of any misrepresentation, because the standard Massachusetts underinsured motorist provisions were incorporated into the policy by operation of law, even though not expressly stated in the policy. For the reasons that will be explained, the Court agrees. Because the legal issue raised by these claims is the same as to all defendants, the Court will order summary judgment against the plaintiffs on all misrepresentation counts as to all defendants pursuant to Mass.R.Civ.P. 56(c).
*753 Defendant Jim Beam’s motion for summary judgment rests on a different legal ground: Jim Beam argues that it is not subject to liability on any of the claims pled, because it is not in the business of insurance for purposes of G.L.c. 176D, and it did not act in the conduct of trade or commerce for purposes of G.L.c. 93A in handling its own employee’s claim for underinsured motorist benefits. Again, the Court agrees. Accordingly, summary judgment will enter for Jim Beam on all counts of the complaint.
1. The Misrepresentation Counts
The plaintiffs’ claims of misrepresentation, as set forth in counts IV through X of their complaint, all center around the allegation that the defendants misrepresented to them that the policy contained standard Massachusetts provisions requiring resolution of disputes over underinsured motorist claims by arbitration, and requiring offset for amounts collected from the underinsured motorist. Although the parties dispute whether defendants ever made any such misrepresentations, they do not dispute that the policy by its terms did not contain such provisions. If, however, the policy incorporated those provisions by operation of law, then whatever statements may or may not have been made on the subject were immaterial, and the misrepresentation claims fail as a matter of law. Thus, the viability of these claims depends on whether the disputed provisions were incorporated into the policy by operation of law. The Court concludes that they were.
Massachusetts law regulates the business of insurance at chapter 175 of the General Laws. Section 47 of chapter 175 sets forth types of insurance coverages permitted; paragraph sixth (b) of that section authorizes insurance coverage for liability for death, bodily injury or property damage. Section 11 ID of c. 175 specifically authorizes coverage for damage caused by uninsured motorists, as follows:
A policy of motor vehicle liability insurance issued under subdivision (b) of clause Sixth of section forty-seven, or an endorsement or rider attached thereto, may provide for the payment of all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle because of bodily injury, sickness or disease, including death resulting therefrom, sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured motor vehicle. Such policy or endorsement or rider shall provide that determination as to whether the insured or his legal representative is legally entitled to recover such damages, and if so the amount thereof, shall be made by agreement between the insured or such representative and the insurer or, if they fail to agree, by arbitration.
Sections 113A through 113T of G.L.c. 175 further regulate motor vehicle insurance in the Commonwealth, beginning with section 113A, which prohibits the issuance or delivery in the Commonwealth of any “motor vehicle liability policy as defined in section thirty-four A of chapter ninety” unless approved by the Commissioner of Insurance. Section thirty-four A of chapter 90 in turn defines “Motor vehicle liability policy” by reference to the liability coverages required as a condition of motor vehicle registration and operation in Massachusetts, pursuant to G.L.c. 90, §§34B, 34J.
Section 113L sets forth requirements for uninsured and underinsured motorist coverage. Under section 113L(1), “No policy shall be issued or delivered in the Commonwealth with respect to a motor vehicle . . . registered in this state unless such policy provides coverage in amounts or limits prescribed for bodily injury or death for a liability policy under this chapter, under provisions approved by the insurance commissioner, for the protection of persons injured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles ...” Section 113L(2) goes on to define “uninsured motor vehicle” to include “protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of insured motor vehicles ... to which a bodily injury liability bond or policy applies at the time of the accident and its bodily injury liability bond or policy limit is less than the policy limit for uninsured motor vehicle coverage and is insufficient to satisfy the damages of persons insured thereunder ...” Thus, underinsured motorist coverage is defined as a subcategory within uninsured motorist coverage, and is subject to the same statutory provisions that apply to the latter, including in particular, the arbitration requirement of section 11 ID.
Section 113L(4) adds a further requirement for underinsured motorist coverage, providing for offset of amounts collected from the underinsured motorist, as follows:
In the event of payment to any person under the coverage provided by this section and subject to the terms and conditions of such coverage, the insurer making such payment shall, to the extent thereof, be entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury for which such payment is made, . . . provided, however,... the insurer shall not be entitled to any such proceeds unless and until the person insured under the coverage required or elected to be purchased under this section has received full compensation for his injuries . . .
The legislature has thus made its intentions with respect to underinsured motorist coverage plain: disputes are to be resolved by arbitration, and payments are to be offset by amounts collected from the under-insured motorist. See Aetna Casualty & Surety Co. v. *754 Poirier, 371 Mass. 257, 261-62 (1976). Here, however, the policy did not contain these required terms, nor, apparently, was it submitted to or approved by the Commissioner of Insurance. The legislature, however, provided for that possibility, in G.L.c. 175, §193, as follows: “Any policy of insurance... issued in violation of any provision of this chapter shall be valid and binding upon the company issuing it, and the rights, duties and obligations of the parties thereto shall be determined according to this chapter.” Thus, the policy is enforceable, despite its violation of statutory provisions, but the violation does not relieve it of the provisions required by law; those provisions are incorporated into the policy, whether stated therein or not, by operation of law.[5]
The plaintiffs seek to avoid this conclusion by reference to the phrase “policy of motor vehicle liability insurance” in §11 ID. They point out that the policy in issue here was one of general commercial liability, rather than motor vehicle insurance, and further, was not approved by the Commissioner, as Massachusetts motor vehicle policies are required to be. From this they conclude that the arbitration requirement of §11 ID does not apply to this policy. The argument is circular. The plaintiffs’ right to recovery under this policy is by virtue of its motor vehicle endorsement; the endorsement clearly provides motor vehicle coverage, otherwise the plaintiffs would have no claim. The policy does appear to have been issued in violation of Massachusetts law, but that is exactly the circumstance that §193 addresses, by incorporating into “[a]ny policy of insurance” the provisions that Massachusetts law requires, whether stated therein or not.[6] See Hartford Ins. Co. v. Hertz Corp., 410 Mass. 279, 287 (1991), quoting Cardin v. Royal Ins. Co. of America, 394 Mass. 450, 453 (1985) (contract provisions “cannot prevail if [they are] contraiy to the statutory language or the legislative policy of G.L.c. 175, §113L”); Johnson v. Hanover Ins. Co., 400 Mass. 259, 264 (1987). See also Barrett v. Transformer Service, Inc., 374 Mass. 707, 713 n.11 (1978) (c. 175, §193 “calls for generous interpretation”).
The plaintiffs’ next effort to avoid the effects of these statutes invokes two statutory provisions that they attempt to characterize as something in the nature of savings clauses. First, the plaintiffs note the phrase “subject to the terms and conditions of such coverage” in §113L(4), as if to suggest that something in the policy somehow obviated the statutory offset requirement. It is undisputed, however, that the policy contained no terms or conditions governing underinsured motorist coverage, or any other motor vehicle coverage, other than policy limits. This statutory phrase does not assist the plaintiffs.
Second, the plaintiffs point to §113L(3), which provides as follows:
An insurer’s extension of coverage as provided in paragraph (2) shall be applicable only to accidents occurring during a policy period in which its insured’s uninsured motor vehicle coverage is in effect and where the liability insurer of the tortfeasor has been declared to be insolvent by a court of competent jurisdiction as of the accident date, or has been declared to be insolvent by a court of competent jurisdiction within one year after the accident date. Nothing herein contained shall be construed to prevent any insurer from extending coverage under the terms and conditions more favorable to its insured than is provided hereunder.
The plaintiffs focus particularly on the last sentence of this provision, reading it as a general authorization for policy provisions more favorable to insureds than otherwise required by statute. They then attempt to characterize arbitration and offset as provisions favorable to the insurer, and the absence of such provisions from the policy as a grant of terms more favorable to the insured.
The analysis fails on multiple levels. First, §113L(3) on its face relates to coverage for damage caused by insureds of insolvent insurers, addressing the timing of insolvency in relation to the accident; no such situation is alleged to be involved here. More generally, even taking the last sentence of the provision out of its context and applying it generally, it is nonsensical to suggest that the absence of statutorily required policy provisions is equivalent to a grant of provisions favorable to the insured. The provisions in issue here neither favor nor disfavor the insured or the insurer; rather, they serve the widely recognized public policies of minimizing unnecessary litigation and preventing multiple recovery. See Drywall Sys., Inc. v. ZVI Constr. Co., 435 Mass. 664, 669 (2002) (legislative policy in favor of arbitration); Aetna Casualty & Surety Co. v. Poirier, 371 Mass. 261-62 (legislative intention to avoid double recovery).
Finally, plaintiff Kenneth Murphy suggests that he would not have received double recovery, absent offset, because his recovery from the underinsured motorist went to repay the workers’ compensation carrier for the benefits it had paid him. The argument ignores those very benefits. Having received workers’ compensation benefits, Murphy was required by statute to repay them from any recovery obtained. See G.L.c. 152, §15. Had he not been so required, his receipt of such benefits, together with damages for the same loss, would have amounted to double recovery; indeed it is this statutory requirement, along with equivalent subrogration provisions in standard insurance contracts, that justifies the exclusion of collateral source payments from calculation of damages for personal injury. The damages awarded by the arbitration panel here, by the very terms of the arbitration agreement, included Murphy’s full damages, without any deduction for amounts already received, whether from workers’ compensation or from the underinsured motorist. Having already received partial payment, he *755 would receive multiple recovery absent the statutorily required offset.
Because the statutorily required provisions were incorporated into the policy by operation of law, any misrepresentations that may have been made by or on behalf of any of the defendants as to their inclusion in or absence from the policy were immaterial. Accordingly, all defendants are entitled to judgment as a matter of law on all misrepresentation claims in the amended complaint, and counts IV through X must be dismissed.
2. The Claim Against Jim Beam
The remaining claim against defendant Jim Beam is Count III, which alleges that Jim Beam violated G.L.c. 93A, §§2 and 9, and c. 176D, §3(9), by “failing to effectuate prompt, fair and equitable settlement of the Plaintiffs’ claims as liability was undeniably clear,” by “compelling the plaintiffs as insureds to institute litigation to recover amounts due by offering substantially less than the amounts ultimately recovered,” and by “failing to conduct a reasonable investigation.”[7] As the plaintiffs now concede, Jim Beam is not subject to G.L.c. 176D, since it is not “engaged in the business of insurance.” See G.L.c. 176D, §l(a) (defining “person’ for purposes of chapter as an entity “which is engaged in the business of insurance”); Anzalone v. Massachusetts Bay Transportation Authority, 403 Mass. 119, 122 (1988) (self-insured employer not subject to c. 176D for handling of employee’s claim). Compare Miller v. Risk Management Foundation of the Harvard Medical Institutions, Inc., 36 Mass.App.Ct. 411, 416-17 (1994) (affirming application of c. 176D standards to entity “engaged in the business of claim facilitation”) .
The plaintiffs’ claim against Jim Beam thus rests solely on G.L.c. 93A. Section 2 of that statute prohibits “unfair and deceptive acts or practices in the conduct of any trade or commerce.” Section 9 creates a cause of action for damages and other relief in favor of any person not acting in trade or commerce who is injured or whose rights are affected by such conduct. Thus, to proceed on this claim, the plaintiffs must offer evidence that Jim Beam committed “unfair or deceptive acts or practices,” and that it did so “in the conduct of any trade or commerce.”
An initial question arises whether the conduct alleged in count III would constitute unfair and deceptive practices in violation of G.L.c. 93A, §2. The allegations of count III track three of the prohibitions set forth in G.L.c. 176D, §3(9). That statute defines the conduct so prohibited as “unfair or deceptive acts or practices in the business of insurance.” Thus, conduct prohibited under c. 176D, §3(9), when committed by an entity engaged in the business of insurance, violates G.L.c. 93A, §2, and gives rise to a cause of action under G.L.c. 93A, §9. See G.L.c. 93A, §9(1) (extending cause of action to “any person whose rights are affected by another person violating the provisions of clause (9) of section three of chapter one hundred and seventy-six D”). As indicated, however, Jim Beam is not in the business of insurance; thus these provisions have no direct application. Unless the conduct alleged in count III is unfair and deceptive in itself, even when committed by an entity not in the business of insurance, it does not violate G.L.c. 93A, §2. The plaintiffs have identified no external standard applicable to a non-insurer in settling a claim for benefits, and the Court is aware of none. Ordinarily, parties not in the business of insurance and their attorneys are free to negotiate disputes as aggressively as they may chose, subject only to ethical constraints affecting attorneys, without fear of sanction under c. 93A, §2. Compare Miller v. Risk Management Foundation of the Harvard Medical Institutions, Inc., 36 Mass.App.Ct. at 418 (c. 176D standards might properly apply to claims facilitator under c. 93A, §2, even without direct application of c. 176D).
Even if, however, the conduct alleged in count III would constitute unfair or deceptive practices for purposes of c. 93A, §2, a more fundamental problem arises: it did not occur in the conduct of trade or commerce. The facts that bear on this issue are relatively simple, and are undisputed: The plaintiff Kenneth Murphy was an employee of Jim Beam. He was injured while operating a motor vehicle within the scope of his employment. Solely because of those two facts, he was an insured, and was eligible for under-insured benefits, under a motor vehicle endorsement to his employer’s insurance policy. Solely because of the same two facts — that is, her husband’s employment and his injury within the scope of his employment — -Kenneth Murphy’s wife, Donna Murphy, was eligible for compensation under the same policy for her loss of consortium. Jim Beam, the employer and named insured, was self-insured for the first $250,000 in coverage under the policy. Thus each of the plaintiffs had a claim for benefits from Jim Beam arising solely from Kenneth Murphy’s employment with Jim Beam. The conduct of Jim Beam that forms the basis for their complaint is its handling of these claims for benefits of Kenneth Murphy’s employment. Jim Beam’s role with respect to the Murphys is thus nothing other than an employer managing its employee benefits. See Anzalone v. Massachusetts Bay Transportation Authority, 403 Mass. at 122. The relationship between employer and employee is not the conduct of any trade or commerce. See Manning v. Zuckerman, 388 Mass. 8, 12 (1983). Accordingly, Jim Beam cannot be liable to the Murphys under G.L.c. 93A for the conduct alleged in count III.[8]
In their response to Jim Beam’s motion, although not in the amended complaint, the plaintiffs assert a theory that Jim Beam is vicariously liable for the conduct of Gallagher Bassett as its agent for handling their claim. In support of this theoiy, the plaintiffs cite evidence that Gallagher Bassett consulted with Jim *756 Beam before making settlement offers within the amount of the self-insured retention, and that Jim Beam had the right to and did approve such offers. Jim Beam points out, in response, that Gallagher Bassett’s contract was with AIG, not with Jim Beam, and that Jim Beam did not control the details of Gallagher Bassett’s work. See generally, Paradoa v. CNA Ins. Co., 41 Mass.App.Ct. 651, 653-55 (1996). Having considered the evidence offered on this subject in the light most favorable to the plaintiffs, the Court concludes that it is sufficient to present a juiy question as to the existence of an agency relationship between Gallagher Bassett and Jim Beam.
The question remains whether that relationship, if found to exist, gives rise to vicarious liability as a matter of law for Gallagher Bassett’s alleged violation of G.L.c. 176D. The plaintiffs rely in this regard on Kansallis Finance Ltd. v. Fern, 421 Mass. 659, 671-76 (1996). In that case the defendants’ law partner issued a fraudulent opinion letter, of which the defendants were unaware. The Court held that partners in such circumstance have vicarious liability for each other’s violation of G.L.c. 93A, based on the agency relationship among partners, although an innocent partner would not be subject to multiple damages. Kansallis establishes the existence of vicarious liability for violations of c. 93A, a proposition that had previously been recognized in the context of corporate employers held liable for employees’ conduct. See id. at 671, and cases cited. Kansallis did not, however, involve any matter relating to insurance claims processing, nor has any party identified any case addressing a question of vicarious liability in this context.
The question presented here is ultimately one of interpretation of G.L.c. 176D, since that is the statute that provides the substantive obligations that Gallagher Bassett is alleged to have breached, for which breach the plaintiffs seek to hold Jim Beam liable. That statute, as discussed supra, by its express terms applies only to entities in the business of insurance, which Jim Beam is not. Jim Beam’s role in this matter is as an insured; indeed, its position would be difficult to distinguish from that of any potentially liable party on whose behalf an insurer, claims adjustment service, or appointed defense counsel attempts to negotiate a settlement. To hold an insured vicariously liable under such circumstances would effectively eliminate from G.L.c. 176D the limitation to entities in the business of insurance. The plain terms of that statute indicate that the legislature did not intend that result. Accordingly, the Court concludes that Jim Beam is entitled to judgment as matter of law on plaintiffs’ vicarious liability theoxy.
CONCLUSION AND ORDER
For the reasons stated, the Court orders as follows:
The Plaintiffs’ Motion for Partial Summary Judgment as to Liability Against Gallagher Bassett Services, Inc., is DENIED.
The Plaintiffs’ Motion for Partial Summary Judgment as to Liability Against Jim Beam Brands Worldwide, Inc., is DENIED.
The Plaintiffs’ Motion for Partial Summary Judgment as to Liability Against National Union Fire Insurance Company, is DENIED, and summary judgment shall enter against the plaintiff, in favor of National Union Fire Insurance Company, on counts IV, VII, and X of the amended complaint.
The Motion of Defendant, Gallagher Bassett Services, Inc., for Summary Judgment is DENIED as to count II, and ALLOWED as to Counts v. and VIII of the amended complaint.
The Defendant Jim Beam Brands Worldwide, Inc.’s Cross Motion for Summary Judgment is ALLOWED.
Counts III through X of the amended complaint are dismissed; counts I and II shall stand for trial.

Some of the factual background of this action appears in Murphy v. National Union Fire Insurance Co., et al., 438 Mass. 519 (2003).

At about the same time, the plaintiffs filed suit to compel arbitration, Norfolk Superior Court Civil Action No. 00-01290. That action was dismissed on January 14, 2001, due to the plaintiffs’ failure to make service.

The plaintiffs do not suggest that they would now be willing to return the payment received pursuant to the arbitrator’s award and take their chances before a Norfolk County jury. Nevertheless, they seek damages for what they describe as the deprivation of their constitutional right to trial by jury.

At argument on the present motions, the plaintiffs indicated that they do not press the theory of inadequate investigation.

At argument on the present motions, the plaintiffs expressly disclaimed any constitutional challenge to the statutes in issue here. That concession was appropriate, given the heavily regulated context of motor vehicle insurance in the Commonwealth. See Cardin v. Royal Ins. Co. of America, 394 Mass. 450, 453 (1985).

The plaintiffs cite Berger v. H.P. Hood, Inc., 424 Mass. 144, 150-52 (1997). That case held only that statutory provisions governing uninsured motorist coverage were not incorporated into umbrella and excess insurance policies that provided no motor vehicle coverage.

See note 4, supra

The Murphys offer evidence of certain additional conduct, not specifically alleged in the complaint, to bolster their claim of unfair and deceptive practices against Jim Beam: They contend that certain documents generated by Jim Beam, supportive of Kenneth Murphy’s claim of damages, were missing from his personnel file when the file was produced in the arbitration. The argument reinforces the conclusion that Jim Beam’s role was as Murphy’s employer; only in that capacity would it have had control of his personnel file.