SUSAN MORRISON vs. TOYS "R" US, INC., MASSACHUSETTS.

No. 01-P-778.

Plymouth. March 7, 2003. - October 16, 2003.

Present: LAURENCE, RAPOZA, & BERRY, JJ.

Further appellate review granted, 440 Mass. 1108 (2003).

*Consumer Protection Act,* Availability of remedy, Insurance, Offer of settlement, Unfair act or practice, Trade or commerce. *Statute,* Construction.

In a civil action, a Superior Court judge erred in entering summary judgment to dismiss a complaint under G. L. c. 93A, alleging unfair and deceptive claims settlement practices by the claims facilitation department of a self-insuring company, where an independent right of action, supported by legislative history and principles of statutory construction, existed under G. L. c. 93A, § 9, for unfair settlement practices by a self-insuring corporate entity that is engaged in trade and business and that has established a risk management processing entity to facilitate claims settlement, and where the specific provisions of G. L. c. 176D did not displace the more general right under G. L. c. 93A with respect to unfair claims settlement practices [617-620]; moreover, the judge, in reviewing whether the claim was sustainable, erred in not considering and affording deference to unfair insurance claims settlement practices defined in G. L. c. 176D, § 3(9) [620-621].

CIVIL ACTION commenced in the Superior Court Department on November 7, 2000.

The case was heard by *Charles J. Hely,* J., on a motion for summary judgment.

*Steven T. Alpert* for the plaintiff.

*John R. Bologna* for the defendant.

BERRY, J. This is an appeal from the entry of summary judgment dismissing a G. L. c. 93A complaint alleging unfair and deceptive claim settlement practices by the claims facilitation department of a self-insuring company. Applying the principles set forth in *Miller* v. *Risk Mgmt. Foundation of the Harvard Med. Insts., Inc.,* 36 Mass. App. Ct. 411 (1994), we determine that the summary judgment dismissal of the complaint was

error of law. As *Miller* established, there is an independent right of action under G. L. c. 93A, § 9, for unfair settlement practices by (1) a self-insuring corporate entity engaged in trade and business, (2) which has established a risk management processing entity to facilitate claims settlement — both of which elements apply to Toys "R" Us in this case. *Ibid.*

1. *Procedural and factual background.* While shopping in a Toys "R" Us store in Kingston, the plaintiff, Susan Morrison, was struck on the head and face by a falling sign. She suffered significant injuries.[1] She brought suit against Toys "R" Us, Inc., Massachusetts, a wholly owned subsidiary of the holding company, Toys "R" Us, Inc. (hereinafter both entities will be collectively referred to as Toys "R" Us). A risk management and claims facilitation department (risk management claims department) in the parent holding company conducted the settlement negotiations with Morrison. By an initial letter, the risk management claims department offered $15,000 to settle the claim. Morrison, whose demand was for $250,000, rebuffed the offer. In light of what appeared to be a case of largely indisputable liability, serious injury, and substantial medical bills (see notes 1 and 2 accompanying text), Morrison forwarded to Toys "R" Us a written notice, pursuant to G. L. c. 93A and G. L. c. 176D, alleging bad faith settlement practices. At this point, the Toys "R" Us risk management claims department counteroffered at $30,000. Morrison stood firm on her demand for $250,000. It was not until the morning of trial that another settlement offer in the amount of $45,000 was advanced. This, too, was rejected by Morrison.

The record reflects that early in the claims review process, the underlying liability of Toys "R" Us was clearly presented to the risk management claims department. Tellingly, following an independent medical examination, the expert retained by Toys "R" Us opined both that Morrison's injuries were serious *and* were caused by the Toys "R" Us falling sign, stating that "[t]he

---

[1]The injuries to Morrison's head and face were deep and exceptionally painful and gave rise to substantial medical bills of approximately $12,000. For greater detail, see note 2, *infra.*

etiology is the trauma experienced on May 30, 1996."[2] Against the backdrop of strong evidence concerning liability developed in the pretrial claims review process, at trial commencement Toys "R" Us essentially admitted liability in its opening statement. The central contested issue concerned damages, for which the jury awarded $1.2 million. Ultimately, the trial judge allowed Toys "R" Us's motion for remittitur and the judgment was reduced to $250,000 plus interest. Morrison thereafter commenced the present action alleging unfair claim settlement practices in violation of G. L. c. 93A and G. L. c. 176D.

Toys "R" Us moved to dismiss the complaint. The judge treated the motion as one for summary judgment and analyzed the issues presented as follows. First, the judge noted that there was no independent right of action under G. L. c. 176D. Next, the judge determined that because the toy company was not engaged in the business of insurance, Toys "R" Us was not subject to the unfair insurance claim settlement prohibitions in c. 176D, § 3(9)[3]; accordingly, the aforesaid unfair practices were not relevant to Morrison's complaint. Finally, the judge dismissed the G. L. c. 93A claim, based on a determination that the right to litigate for unfair claims settlement practices set

---

[2]The Toys "R" Us medical expert evaluated the extent of Morrison's injuries as follows.

"My clinical examination indicated through palpation and range of motion observations that there is both a TMD problem and a cervical problem. In both regions the problem is soft tissue and largely due to very painful muscles. Palpation was so painful that the examination was curtailed so as to not cause the patient undue pain.

"The history and examination indicate a diagnosis of masticatory myofascial pain and cervical myofascial pain. . . .

"At this time there is substantial disability as Ms. Morrison is unable to work, unable to use her head and jaws normally. She must eat soft foods only. She is often in such pain that she cannot leave the house. She always needs to preplan her schedule around the exacerbations of pain."

[3]General Laws c. 176D, § 3(9), as inserted by St. 1972, c. 543, § 1, sets forth fourteen specific unfair claims settlement practices, including, as pertinent to this appeal, the prohibited practice of "[f]ailing to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear."

forth in c. 93A, § 9(1), was inextricably intertwined with, and limited to, claims asserted against insuring entities, the activities of which fell within the general insurance regulatory provisions of G. L. c. 176D, and the specific prohibitions against unfair insurance practices set forth in c. 176D, § 3(9). Because Toys "R" Us was not so engaged in the business of insurance and subject to c. 176D, the judge concluded, Morrison had no separate and independent right of action under c. 93A, § 9, generally.[4]

We are in accord with the points of law that Toys "R" Us is not an insuring entity within the meaning of c. 176D,[5,6] and that the unfair practices defined in c. 176D, § 3(9), do not, by

---

[4]The judge's analysis on these issues was as follows.

"The law does not impose a duty on all tort defendants to make settlement offers. Persons being sued generally have the right to take the case to trial and to let the jury decide. Massachusetts Constitution, art. 15. Even if liability is clear, ordinary defendants in Massachusetts have the right to let the jury decide the damages. *It is only persons 'engaged in the business of insurance' who have the statutory duty to effectuate prompt, fair settlements when liability has become reasonably clear.* . . . [U]nder G. L. c. 176D, §§ 1(a) and 3, and the applicable case law, a self-insurer is not subject to the statutory duty to effectuate a fair settlement unless it is a self-insurer 'engaged in the business of insurance.' . . . As a tort defendant not engaged in the business of providing insurance services to persons other than itself, Toys 'R' Us had no legal duty to the plaintiff under G. L. c. 93A and 176D to make a settlement offer" (emphasis added).

[5]General Laws c. 176D, § 1(a), as amended by St. 1974, c. 473, in pertinent part, defines as insuring entities subject to the act "any individual, corporation, association, partnership, . . . and any other legal entity *or self insurer* which is *engaged in the business of insurance*, including agents, brokers, and adjusters. . . ."

[6]The business of insurance, it has been said "involves profit driven business decisions about premiums, commissions, marketing, reserves and settlement policies and practices." *Poznik* v. *Massachusetts Med. Professional Ins. Assn.*, 417 Mass. 48, 51 (1994). Toys "R" Us does not fall within this definition, notwithstanding that the record reflects that Toys "R" Us established a national office for risk management to make decisions about "settlement policies and practices." Moreover, even though Toys "R" Us is a self-insurer, that fact does not, standing alone, render the business enterprise subject to c. 176D. See note 5, *supra* (excluded from c. 176D are self-insurers except if engaged in the business of insurance). See *Anzalone* v. *Massachusetts Bay Transp. Authy.*, 403 Mass. 119, 122 (1988). The essential point remains that Toys "R" Us,

their own force and effect, give rise to a private right of action.[7] However, there was error of law in that part of the summary judgment analysis that concluded that *only* entities engaged in the business of insurance and subject to the provisions of c. 176D may confront liability for unfair claim settlement practices in a private right of action under c. 93A, § 9. There was also error in that part of the summary judgment analysis that, in effect, denied relevance to the unfair insurance settlement practices defined in G. L. c. 176, § 3(9), in reviewing whether a G. L. c. 93A, § 9, violation may be provable. We turn to each of these issues.

2. *The independent c. 93A, § 9, right of action for allegedly unfair claims settlement practices.* The summary judgment determination that this business entity is not engaged in the business of insurance within the meaning of c. 176D, § 3(9), does not end the inquiry as matter of law and, contrary to the motion judge's ruling, does not automatically render a complaint, pleaded under G. L. c. 93A alleging unfair claims settlement practices, subject to dismissal. Rather, there is an independent sustaining cause of action in c. 93A, § 9, for unfair claims settlement practices (apart from the incorporation of unfair insurance-based claims settlement practices predicated exclusively on c. 176D). A complaint under c. 93A, § 9, that seeks damages for unfair claims settlement activities conducted by a risk management processing entity established to facilitate

---

and its toy stores throughout the nation, derive their profits from the sale of toys, not from engagement in the business of insurance.

[7]General Laws c. 176D does not itself provide a private right of action for unfair or deceptive insurance claim settlement practices. *Dodd* v. *Commercial Union Ins. Co.,* 373 Mass. 72, 75 (1977). General Laws c. 93A was amended in 1979 to add § 9(1), in order to provide such a right of action for such violations. See St. 1979, c. 406, § 1. As so amended, G. L. c. 93A, § 9(1), provides:

> "Any person, other than a person entitled to bring action under section eleven of this chapter, who has been injured by another person's use or employment of any method, act or practice declared to be unlawful by section two or any rule or regulation issued thereunder or any person whose rights are affected by another person violating the provisions of clause (9) of section three of chapter one hundred and seventy-six D may bring an action . . . ."

claims settlement by a self-insuring corporate entity engaged in trade or commerce is not subject to dismissal, simply because no insurance company regulated under c. 176D is a named defendant. Put another way, given the aforesaid requisite elements, this c. 93A right of action for unfair claims settlement practices is not limited to entities engaged in the business of insurance and subject to the entire insurance-based regulatory scheme of G. L. c. 176D.

These legal principles are controlled by *Miller* v. *Risk Mgmt. Foundation of the Harvard Med. Insts., Inc.*, 36 Mass. App. Ct. 411 (1994). As Justice Kaplan wrote for the court in *Miller*:

> "Risk Management [here, the risk management claims department of Toys 'R' Us] is prompted to argue that if, because it is a noninsurer, no direct action can be brought against it under the special provision of c. 93A, § 9, which authorizes an action against an insurance company that violates c. 176D, § 3(9), there must be some mistake in using against it, in this ordinary c. 93A, § 9, action, standards drawn from c. 176D, § 3(9).

> "The argument is perverse. Risk Management, [here, the risk management claims department of Toys 'R' Us] as claims negotiator and potential settler, has been interposed between the [self] insurer CRICO [here, Toys 'R' Us] and the claimant, and nothing seems more appropriate than to apply to it the standards of fair dealing expressed in c. 176D, § 3(9). This reference, moreover, is consistent with the broad policy of the courts, in defining what is or is not unfair or deceptive for purposes of c. 93A, to go for fruitful analogy to standards established by cognate statutes, common law rules, or other sources."

*Id.* at 417-418 (footnote omitted).

As in *Miller*, the risk management claims facilitation department, as the sole agent of the self-insuring corporate entity Toys "R" Us, conducted negotiations that involved assessing the merits of Morrison's claim, determining potential litigation exposure on the claim, engaging in claims facilitation and advancing settlement offers to Morrison. Accordingly, such claims settlement practices fall within the domain of the general

consumer protections of c. 93A and, if conducted in an unfair and deceptive manner, may give rise to potential liability and sound in a sustainable complaint under that statute irrespective of the applicability of the c. 176D insurance regulatory scheme of oversight.[8] This independent c. 93A right of action for alleged unfair claims settlement practices is consistent with "the commonplace ethical view that a claims facilitator ought not wear out the claimant by unduly delaying settlement when liability is clear." *Miller*, 36 Mass. App. Ct. at 418.

We note that the legislative history and principles of statutory construction support this independent right of action under c. 93A. First, as noted in *Miller*, the application of c. 93A rights and remedies to such unfair settlement practices (as distinct from cases exclusively involving insurance companies subject to c. 176D) is supported by the case law preexisting the 1979 amendments, which created the c. 93A, § 9(1), private right of action for c. 176D, § 3(9), violations. *Miller*, 36 Mass. Ct. at 418 n.12. That is to say, even before this statutory amendment, it was the state of the law that "c. 93A, § 2(*a*), cover[ed] insurance practices in its prohibition of unfair or deceptive acts or practices in any trade or commerce." *Dodd* v. *Commercial Union Ins. Co.*, 373 Mass. 72, 78 (1977). See *Noyes* v. *Quincy Mut. Fire Ins. Co.*, 7 Mass. App. Ct. 723, 726 (1979).

Second, while a specific statute (here, c. 176D, covering an entity engaged in the business of insurance) may be deemed to displace a more general statute (here, c. 93A, covering general unfair trade and business practices), that principle of statutory

---

[8]The risk management claims facilitation entity in *Miller* acted as a third party claims facilitator in conducting settlement negotiations on behalf of CRICO, an offshore self-insurance corporation that provided medical malpractice insurance for certain teaching hospitals. *Id.* at 416. The motion judge distinguished this case on that basis. However, the particular corporate structure for CRICO and Risk Management Foundation was not the turning point for the independent c. 93A liability. Rather, the turning point as to Risk Management Foundation in *Miller*, and the nationwide risk management claims department for Toys "R" Us in this case, is that both entities were established for the purposes of investigating and negotiating claims and conducted these activities in an allegedly unfair manner in violation of c. 93A, even though neither entity was engaged in the business of insurance and thus subject to c. 176D. *Id.* at 418.

construction is inapplicable here. The amendment that created the c. 93A, § 9(1), cause of action for c. 176D, § 3(9), unfair claims practices does not evince a legislative intent to preclude the general c. 93A unfair and deceptive trade practices liability vis-à-vis corporate enterprises and business entities that are not engaged in the business of insurance but that are nonetheless conducting unfair claims settlement negotiations through a risk management claim facility established by a self-insurer. Viewed another way, c. 176D carved out a limited sphere within which are captured entities in the insurance business. However, that specific statute does not encompass within its sphere of potential insurance-based liability entities engaged in trade and commerce but not specifically engaged in the business of insurance. Thus, the c. 176D sphere does not eclipse c. 93A with respect to unfair claims settlement practices. "The mere existence of one regulatory statute does not affect the applicability of a broader, nonconflicting statute, particularly when both statutes provide for concurrent coverage of their common subject matter." *Dodd*, 373 Mass. at 78.

Third, that unfair claims settlement practices by a claim processing entity, albeit not an insurance entity under c. 176D, fall within the reach of c. 93A comports with the latter as "a statute of broad impact which creates new substantive rights and provides new procedural devices for the enforcement of those rights." *Slaney* v. *Westwood Auto, Inc.*, 366 Mass. 688, 693 (1975).

3. *The relevance of the G. L. c. 176D, § 3(9), prohibitions.* In light of the reinstatement of Morrison's complaint, which will give rise to further proceedings, we also address a related error in the lower court's decision that may be pertinent to those proceedings. That is the summary judgment decision dismissing the complaint denied any relevance of the c. 176D, § 3(9), criteria to this case. This ruling is error because, when considering whether an independent c. 93A claim for unfair claims settlement practices is sustainable against a business entity engaged in claims facilitation and risk management, *Miller* held that it is appropriate to consider and afford deference to these c. 176D unfair insurance claims settlement practices. This is so because the criteria in c. 176D, § 3(9), provide a frame of reference

"consistent with the broad policy of the courts, in defining what is or is not unfair or deceptive for purposes of c. 93A, to go for fruitful analogy to standards established by cognate statutes, common law rules, or other sources." *Miller*, 36 Mass. App. Ct. at 418.

The grant of summary judgment dismissing the complaint is reversed, and the case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*