Pierce, J. Plaintiff Essex Chiropractic Office (“Essex”) contends on this appeal
that the trial court erroneously awarded summary judgment to the defendant, Arnica Mutual Insurance Company (“Arnica”), based on a payment made by Arnica to Essex pursuant to Fascione v. CNA Ins. Cos., 435 Mass. 88 (2001). As to both the G.L.c. 90, §34M and the G.L.c. 93A claims, we affirm.
On June 4, 2009, Essex’s patient, Yorvi Matute (“Matute”), was involved in an automobile accident while covered by a standard Massachusetts automobile policy issued by Amica. Matute submitted two applications for personal injury protection (“PIP”) benefits, both accompanied by a health benefit affidavit identifying Mid West National Life Insurance as Matute’s health care provider.
On August 22, 2009, Arnica received a bill for $171.00 from Winchester Emergency Medical for services rendered to Matute on June 4, 2009. That bill was paid with a check dated August 26,2009. On September 4,2009, Arnica received two additional bills for services rendered to Matute. The first, for $584.99, was from Winchester Hospital. The second, for $985.00, was from Essex. Those bills were both paid by checks dated September 17, 2009.
An independent medical examination (“IME”) of Matute was conducted on September 15, 2009 by Dr. John H. Chaglassian (“Chaglassian”). In a report issued the same day, the doctor concluded that Matute had “fully recovered and does not need any additional treatment.” The doctor also stated that Matute had “reached maximum medical improvement and a medical end result.” On September 17,2009, Arnica wrote to Matute reporting the results of the IME and advising him that, based on the IME, Arnica was “terminating all Personal Injury Protection for this accident.” The letter further stated that Arnica would not “consider payment of any bills for treatment received after the date of the [IME].”
On October 1, 2009, Arnica received an invoice from Essex for $1,670.00 for services rendered from September 2 through September 29, 2009. Although some of the treatment was provided before the IME cutoff date, Arnica responded in a letter dated October 6,2009: “We cannot consider payment at this time for the following reason (s): ‘Independent Medical Examination CUT OFF *52 7/15/2009.’”[1] On October 9, 2009, Arnica received an invoice for $218.00 from North Shore Radiological Associates, Inc. for an MRI conducted on July 9, 2009. This invoice was paid with a check dated October 30, 2009. The check was sent by Arnica to Matute’s attorney, Joseph C. Edwards (“Edwards”).
In a statement dated September 1,2009, which Arnica contends it did not receive until on or about October 9,2009, Winchester Hospital sought payment of $3,042.96 for an MRI conducted on July 9, 2009. In response, Arnica sent Attorney Edwards a check, dated November 24, 2009, payable to Winchester Hospital, in the amount of $41.01, with an explanation that Arnica had paid $2,000.00 in PIP benefits under the policy and that “[a] 11 outstanding bills should now be submitted to the health insurer. If the health insurer does not pay the bills in full, they may be re-submitted to Arnica, along with the insurance denial, for consideration.” This language was an apparent reference to the standard Massachusetts automobile insurance policy that, in relevant part, provides that where individuals seeking PIP benefits are covered by a health insurance policy, the PIP insurer “will pay up to $2,000 of medical expenses for any injured person.” The PIP insurer will also pay in excess of $2,000.00, but not more than $8,000.00, for medical expenses not paid by the health plan; however, “[mjedical expenses must be submitted to the health plan to determine what the health plan will pay before [the PIP insurer will] pay benefits in excess of $2,000.” This $2,000.00 limit is referred to in the record as the $2,000.00 PIP “threshold.”
On November 5, 2009, Arnica received from Essex a bill for $865.00 for services rendered between October 1 and October 26, 2009. On November 6, 2009, Arnica sent Essex a form letter denying payment of the bill. As reasons for the denial, the letter had an “X” next to all of the following: “No PIP application on file; Awaiting medical records; Awaiting Health Benefits Affidavit; $2,000 Personal Injury Protection threshold has been reached; Personal Injury Protection Benefits have been exhausted; Independent Medical Examination Cut Off of 9/15/2009; $8,000 Personal Injury Protection benefits have been exhausted; Personal Injury Protection benefits have been denied; and Other.” In its appellate materials, Arnica explains that this letter was the result of “inadvertent error” and the actual reason for the denial was “that the $2,000 PIP threshold had been reached and that the services had been rendered after the IME [cutoff] on September 15, 2009.”
On December 3, 2009, Arnica received a final bill from Essex in the amount of $460.00 for services rendered from November 4 through November 18, 2009. On December 10, 2009, Arnica sent to Essex the same form letter sent on November 6, 2009. This time, the only reason indicated for denying payment was “Independent Medical Examination cut off of 9/17/2009.”[2] On February 19, 2010, Essex filed a complaint in the Haverhill District Court alleging violations of G.L.C. 90, §34M, G.L.c. 176D, G.L.c. 93A, and G.L.C. 175, §111C.[3]
At all relevant times, Richard Harrington (“Harrington”) was a claims supervisor *53 at Arnica, responsible for managing litigation involving claims for PIP benefits. In an affidavit in support of Arnica’s motion for summary judgment, Harrington explained that after a March 9,2009 consultation with Colleen Boulette (“Boulette”), the claims adjuster assigned to the Matute case, Arnica had engaged the services of Attorney Charles G. Devine, Jr. (“Devine”). On April 25, 2010, Attorney Devine advised Harrington that legal fees to defend the litigation would be approximately $2,500.00, plus the cost of having Dr. Chaglassian testify at trial. As a result, Harrington “made a business judgment” and decided to pay Essex’s outstanding bills in the total amount of $2,995.00. A check payable to Essex was dated July 16, 2010. Attorney Devine’s cover letter to counsel for Essex was dated September 13,2010. In the letter, Attorney Devine cited Fascione and stated, “As you know, my client’s tender of the full PIP payments extinguishes your client’s claim under M.G.Lc. 90, §34M.” A stipulation of dismissal with prejudice was enclosed with the check. The payment was received by Essex’s counsel on September 15, 2010. The check was never cashed.
While Arnica was conferring internally, consulting with counsel and considering its options, the litigation continued. The parties attended a case management conference on June 11, 2010, exchanged correspondence, had telephone conversations, engaged in discovery, and filed motions with the court, including Essex’s motion to amend the complaint, which was filed the same day that Essex received the Fascione payment. On November 22,2010, Arnica filed its motion for summary judgment. On November 30, 2010, Essex filed a cross motion for summary judgment, which also served as its opposition to Arnica’s motion. On December 21, 2010, the trial court issued an order allowing Arnica’s motion for summary judgment and denying the cross motion. This appeal followed.
“Under familiar principles, we review a grant of summary judgment to determine ‘whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law.’” Massachusetts Prop. Ins. Underwriting Ass’n v. Georgaklis, 77 Mass. App. Ct. 358, 360 (2010), quoting Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117, 120 (1991).
It is not in dispute that on September 13,2010, Arnica paid Essex the full amount of the contested claim. Based on that payment, Arnica contends summary judgment was warranted. In considering a motion for summary judgment based on a Fascione payment, this Division has said: “It would not be inconsistent with the holding in Fascione to require that the insurer on the §34M claim show more on summary judgment than simply that the bills have all been paid. It should also have to show that there is no genuine issue of fact concerning whether it had a valid reason not to pay, and that it paid an invalid claim for reasons unrelated to its merits.” Metro West Med. Assocs., Inc. v. Amica Mut. Ins. Co., 2010 Mass. App. Div. 136, 138. More recently, we have also said that simply asserting that the decision to pay was a “business decision” is not enough to justify summary judgment, where the insurer may have believed either that it was justified in not paying the balance but it was not worth the cost of litigation to go on with the case, or that it was unlikely to prevail on the G.L.c. 90, §34M claim. Kantorosinski Chiropractic, Inc. v. Plymouth Rock Assur. Corp., 2011 Mass. App. Div. 234, 235.
The Harrington affidavit in support of Arnica’s motion for summary judgment *54 states that the decision to pay was a “business judgment,” prompted by anticipated legal fees. The affidavit also recites that Harrington was advised by Boulette that the claim had been denied based on the IME cutoff, the $2,000.00 PIP limit, or both. Boulette’s affidavit, also in opposition to summary judgment, states that because Matute submitted two health benefits affidavits, both naming Mid West National Life Insurance as the health insurer, Arnica believed the $2,000.00 PIP threshold applied. Boulette also explained that before Arnica would pay over the $2,000.00 limit that the bills first had to be submitted to the health insurer. Taken as a whole, the material offered in support of the motion suggests both a valid reason for not paying and that the Fascione payment was not related to the merits of Essex’s claims. Accordingly, Arnica’s pleadings were sufficient to shift the obligation to Essex to show “a genuine issue for trial.” Mass. R Civ. E, Rule 56(e).
In opposition to the motion for summary judgment, Essex offered the affidavit of Michael Provenzano (“Provenzano”), the keeper of records for Essex. Attached to the Provenzano affidavit are Essex’s “Itemized Statements” and twenty-two pages of “Progress Notes” in which Matute is alleged to have reported neck and back pain requiring continued treatment more than a month after the IME cutoff date established by Arnica. Here, as in Kantorosinki, supra at 236, these records raise issues of fact regarding Arnica’s defense based on the IME cutoff.
On the other hand, as to Arnica’s claim that it was not obligated to pay more than the $2,000.00 PIP limitation, Essex offers only Provenzano’s statement: “That Essex never received, from [Arnica] ANY correspondence ever mentioning a $2K exhaust issue.” Where the party moving for summary judgment has satisfied its burden, “an adverse party may not rest upon mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided ..., must set forth specific facts showing that there is a genuine issue for trial.” Mass. R Civ. R, Rule 56 (e). As to this defense, Essex has failed to establish a genuine issue of fact for trial.
While Provenzano denies that Essex received any correspondence mentioning the $2,000.00 PIP exhaustion issue, also attached as an exhibit to Essex’s own summary judgment pleadings is the November 6,2009 correspondence from Boulette to Essex with all the boxes checked, including “$2,000 Personal Injury Protection threshold has been reached.” In addition, Essex fails to account for the two health benefit affidavits signed by Matute, both of which refer to the $2,000.00 PIP threshold and the November 24, 2009 letter from Boulette to Matute’s counsel explaining that Arnica had paid $2,000.00 and that “all outstanding bills should now be submitted to the health insurer.” Provenzano’s denial is not sufficient to show the existence of a genuine issue of fact concerning Arnica’s defense that Matute was not entitled to receive more than $2,000.00 in PIP benefits. Accordingly, we affirm the award of summary judgment on the §34M claim.
We apply the same analysis to Essex’s G.L.c. 93A claim. It is often said that a business plaintiff such as Essex bears a “heavy burden” to establish the intentional deception or unfair taking advantage actionable under G.L.c. 93A, §11. Duffy v. Enterprise Rent-A-Car Co. of Boston, Inc., 2010 Mass. App. Div. 190, 192. While a Fascione payment alone does not extinguish an otherwise viable claim under G.L.c. 93A, §11, “[g]enerally, the mere fact that a party delayed payment until after it changed its mind about contesting a matter may not rise to the level of a violation of G.L.c. 93A, §11.” Provenzano v. Plymouth Rock Assur. Corp., 2008 Mass. App. Div. 68, *55 70. “The cases ‘regularly emphasize’ that to recover under §11, a party ‘must demonstrate the existence of an unfair or deceptive act or practice, a loss, and the causation of one by the other.’” Stamatakis v. Metropolitan Prop. & Cas. Ins. Co., 2011 Mass. App. Div. 174, 178-179, quoting Lord v. Commercial Union Ins. Co., 60 Mass. App. Ct. 309, 321 n.10 (2004).
In this case, Essex has not shown that it suffered any cognizable loss as a result of Arnica’s allegedly unfair or deceptive act or practice. Including the Fascione payment, Essex was paid $3,980.00, the full amount of all it bills. Having concluded that Essex was not entitled to receive more than $2,000.00, we find that it has failed to satisfy “an essential predicate for recovery under our consumer protection statute.” Hershenow v. Enterprise Rent-A-Car Co. of Boston, Inc., 445 Mass. 790, 791 (2006). Summary judgment affirmed.
So ordered.

 Presumably, Arnica meant to refer to an IME cutoff of September 15,2009, not July 15, 2009.

 Here again, Arnica presumably meant to refer to September 15,2009, rather than September 17, 2009.

 This appeal relates only to the G.L.c. 90, §34M and G.L.c. 93A claims.