Swan, J.
Byron V. Hartunian, M.D., P.C. (“Hartunian”) commenced this action against Pilgrim Insurance Company (“Pilgrim”) for breach of contract to recover unpaid personal injury protection (“PIP”) benefits under G.L.c. 90, §34M and for violations of G.L.C. 93A, §11, all arising from medical services provided to Patricia Henderson-Sneed (“Sneed”). After a jury-waived trial, the judge found for Pilgrim on the PIP claim and for Hartunian on the G.L.c. 93A claim.[1] Pilgrim has appealed the G.L.c. 93A judgment.
In reaching his decision, the judge made the following findings of fact. On April 24, 2007, Sneed was injured in an accident as an occupant in a vehicle insured by Pilgrim. Hartunian submitted bills and treatment records to Pilgrim on five dates in 2007, namely, May 15, June 20, July 19, August 14, and October 2. Pilgrim paid some of the bills, leaving $990.00 unpaid. Pilgrim notified neither Sneed nor Hartunian of its intention not to pay the latter amount within ten days of receiving the bills and records. Pilgrim based its denial of payment on a review of the bills and records, but “did not conduct a reasonable or prompt investigation of the claim.” The bills and records made it “reasonably clear” that Hartunian had a valid PIP claim. After “repeated demands for payment and refusals,” Hartunian commenced this action on November 4, 2008. On December 22, 2008, Pilgrim paid Hartunian $990.00 “because of the filing of the suit,” leaving Hartunian with lost interest of $188.10.
The trial judge found that Pilgrim breached its obligation to make payment within ten days after receipt of the bills and records, or to notify Sneed or Hartunian of its intention not to pay. Since payment of $990.00 before judgment resulted in no “amount due and payable,” as articulated in Fascione v. CNA Ins. Cos., 435 Mass. 88, 94 (2001), the court entered judgment for Pilgrim on the PIP claim. The judge further found that the “settlement process was inexplicably delayed, thereby compounding [Hartunian’s] frustrations and fears of prolonged and deliberate neglect of his meritorious claim”; that Pilgrim’s “unexplained failure to pay the balance of PIP *209 benefits, after it should have known the bills and services were reasonable,” forced Hartunian “to bring this law suit to receive his payment to which he was entitled”; and that having not shown that the “delay was reasonable and made in good faith,” Pilgrim knowingly and wilfully engaged in “actions [that] were unreasonable and made in bad faith,” and caused monetary injury to Hartunian. On these findings, the judge determined that Pilgrim had engaged in unfair and deceptive acts and practices, and assessed damages in the sum of $188.10, tripled to $564.30, together with attorney’s fees and costs.
Pilgrim asserts that the judge’s findings were not supported by the evidence and points to three errors. The first allegation of error is found in the following passage of the findings:
Also, [Pilgrim] did not submit [Hartunian’s] bills and records to a medical doctor for review. The only records that [Pilgrim] submitted to any health care provider were the treatment records of New England Physical Therapy Plus to a physical therapist, Kelly Holonan, P.T. [Pilgrim] did not submit the medical records of [Hartunian] to Kelly Holonan, P.T. for consideration. Regardless, the bills and treatment notes made it reasonably clear that [Hartunian] had a valid claim for the PIP benefits from [Pilgrim].
Pilgrim argues that the record is devoid of any evidence that Kelly Holonan (“Holonan”) reviewed records of New England Physical Therapy Plus. That may be so, but New England Physical Therapy Plus was not a party to the case, and whether its records were reviewed is irrelevant. The judge also said, and on this Pilgrim agrees, that Holonan did not review any of Hartunian’s records. The judge further found, and Pilgrim does not dispute, that Pilgrim conducted no record review by a health care provider. “[N]o insurer shall refuse to pay a bill for medical services ... if such refusal is based solely on a medical review of the bill or of the medical services underlying the bill, which review was requested or conducted by the insurer, unless the insurer has submitted, for medical review, such bill or claim to at least one practitioner registered or licensed under the same section of [G.L.c. 112] as the practitioner who submitted the bill for medical services.” G.L.c. 90, §34M. Pilgrim’s failure to fulfill this statutory obligation is supported by the evidence and is the gravamen of the judge’s finding.
Next, Pilgrim faults the judge’s observation that Pilgrim “wait[ed] approximately twelve (12) months (October 2, 2007 to December 22, 2008) to determine if [Hartunian’s] bills and services were proper” and points to payments it made prior to December 22,2008. But the judge did find that those earlier payments were made. What was not paid was the $990.00 sued for, and that sum was eventually paid, in the words of the judge, only “because of the filing of the suit, ” i.e., Pilgrim made a so-called Fascione payment to avoid a judgment for an amount “due and payable.” But such a payment does not insulate an insurer from a G.L.c. 93A claim, as Fascione, supra at 95, itself states.
In the third allegation of error in the findings, Pilgrim points to evidence of the reasonableness of its actions, namely, the trial testimony of its claims representative that its decision not to pay the bills was based on an independent medical examina *210 tion (“IME”) by Holonan[2] and a bill audit performed by “Med Data.” Neither the IME report nor the cryptically described Med Data[3] was offered into evidence by Pilgrim, and the judge, as fact finder, was free in any event to discount or ignore this testimony.
On this record, then, Pilgrim’s challenge to the judge’s findings must fail. “Our role is strictly limited. ‘An appellate court will set aside ... findings only if they are “unsupported by the trial evidence or tainted by error of law.’” North Shore Chiropractic v. Norfolk & Dedham. Group, 2010 Mass. App. Div. 180, 181, quoting Macone Bros., Inc. v. Strauss, 1997 Mass. App. Div. 95, 96. Such findings must be ‘clearly erroneous’ and regard must be given ‘to the opportunity of the trial court to judge the credibility of the witnesses.’ Mass. R. Civ. R, Rule 52(c). ‘So long as the judge’s account is plausible in light of the entire record, an appellate court should decline to reverse it.’ Demoulas v. Demoulas Super Mkts., Inc., 424 Mass. 501, 510 (1997).” Cardoso v. Law Offices of Martin C. Liu & Assocs., PLLC, 2011 Mass. App. Div. 102, 106. The judge’s findings were not clearly erroneous.
Given the judge’s findings, Pilgrim also argues that he applied the wrong standard in finding liability under G.L.c. 93A, §11, which states in part:
Any person who engages in the conduct of any trade or commerce and who suffers any loss of money or property, real or personal, as a result of the use or employment by another person who engages in any trade or commerce of ... an unfair or deceptive act or practice ... may ... bring an action... for damages....
*211 “The cases ‘regularly emphasize’ that to recover under §11, a party ‘must demonstrate the existence of an unfair or deceptive act or practice, a loss, and the causation of one by the other. See Massachusetts Farm Bureau Fedn., Inc. v. Blue Cross of Mass., Inc., 403 Mass. 722, 730 (1989); Hartford Cas. Ins. Co. v. New Hampshire Ins. Co., 417 Mass. 115, 125 (1994).’ Lord v. Commercial Union Ins. Co., 60 Mass. App. Ct. 309, 321 n.10 (2004).” Stamatakis v. Metropolitan Prop. & Cas. Ins. Co., 2011 Mass. App. Div. 174, 178-179. “It is often said that a business plaintiff... bears a ‘heavy burden’ to establish the intentional deception or unfair taking advantage actionable under G.L.c. 93A, §11. Duffy v. Enterprise Rent-A-Car Co. of Boston, Inc., 2010 Mass. App. Div. 190, 192. While a Fascione payment alone does not extinguish an otherwise viable claim under G.L.c. 93A, §11, ‘[generally, the mere fact that a party delayed payment until after it changed its mind about contesting a matter may not rise to the level of a violation of G.L.c. 93A §11.’ Provenzano v. Plymouth Rock Assur. Corp., 2008 Mass. App. Div. 68, 70.” Essex Chiropractic Office v. Amica Mut. Ins. Co., 2012 Mass. App. Div. 51, 54-55. Given the facts as found by the judge, who heard the witnesses and considered the evidence first hand, we cannot say that the delay of some twelve months in paying $990.00, with the concomitant loss of the money’s use, did not rise to the level of a §11 violation, or that Hartunian did not meet its “heavy burden” in proving that claim.
Our analysis does not end there, however. The judge found that Pilgrim’s actions ran afoul of G.L.c. 176D, §3(9) (b), (d), (e), (g), and (n),[4] part of the unfair insurance settlement practices statute, and ruled that G.L.c. 93A “incorporates” G.Lc. 176D, §3(9). Pilgrim correctly maintains that G.L.c. 176D violations are not specified as grounds for claims by businesses under G.L.c. 93A §11, as they are for consumers *212 under G.Lc. 93A, §9. Unlike a business, a “consumer asserting a claim under G.L.C. 93A, §9 may recover for violations of G.Lc. 176D, §3 (9), without regard to whether the violation was unlawful under G.Lc. 93A, §2, because of the explicit statement to that effect in §9.” Polaroid Corp. v. Travelers Indent. Co., 414 Mass. 747, 754 (1993).[5] While G.Lc. 93A, §11, by contrast, “does not grant an independent right to recover for violations of G.Lc. 176D, § 3(9),” id., we have left open the question whether a business plaintiff “may, in general terms, recharacterize a specific basis of liability under G.Lc. 176D, §3(9), and maintain an action against an insurer under G.Lc. 93A, §11.” Duffy v. Commerce Ins. Co., 2009 Mass. App. Div. 196, 199.
Prior to the amendment of G.Lc. 93A, §9(1), which specifically gave a right of action to consumers to seek G.L.c. 93A relief for violations of G.Lc. 176D, §3(9), see St. 1979, c. 406, §1, the Supreme Judicial Court held that G.Lc. 93A, §2(a), which “prohibits ‘unfair or deceptive acts or practices in the conduct of any trade or commerce’ (emphasis added),” by inclusion “covers insurance practices in its prohibition of unfair or deceptive acts or practices in any trade or commerce.” Dodd v. Commercial Union Ins. Co., 373 Mass. 72, 75, 78 (1977). More recently, in a case involving a consumer’s complaint under G.L.c. 93A, §9(1), the Supreme Judicial Court observed more generally, without differentiating between consumer and business actions, and in words tracking those of the trial judge:
The key provision of G.Lc. 93A found in §2 (a) of the statute, states that “[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.” General Laws c. 176D, §3, prohibits “unfair or deceptive acts or practices in the business of insurance,” and §3(9) enumerates acts and omissions that constitute unfair claim settlement practices. The former statute incorporates the latter, and an insurer that has violated G.Lc. 176D, §3(9) (f), by failing “to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear,” by definition, has violated the prohibition in G.Lc. 93A, §2, against the commission of unfair or deceptive acts or practices (emphasis added).
Hopkins v. Liberty Mut. Ins. Co., 434 Mass. 556, 564 (2001). Simply stated, an “independent c. 93A right of action for alleged unfair claims settlement practices is consistent with ‘the commonplace ethical view that a claims facilitator ought not wear out the claimant by unduly delaying settlement when liability is clear.’” Morrison v. Toys “R” Us, Inc., Mass., 59 Mass. App. Ct. 613, 619 (2003), reVd on other grounds, 441 Mass. 451 (2004), quoting Miller v. Risk Mgt. Found, of the Harvard Med. Insts., Inc., 36 Mass. App. Ct. 411, 418 (1994). The definition of “unfair or deceptive acts or practices” in G.Lc. 93A, §2 (a) applies to both consumer claims under §9 and busi *213 ness claims under §11. Logically, therefore, an action to recover for the generic unfair insurance settlement practice of “wear [ing] out the claimant by unduly delaying settlement when liability is clear” should be equally available to a business as to a consumer.
While the trial judge cited violations of G.L.c. 176D as the basis for finding a §11 violation, he did not rule that a G.L.c. 176D violation constituted a per se violation of §11. Rather, using the language of G.L.c. 176D, §3(9), he based his ultimate finding upon the delay in settlement, forcing Hartunian to sue for its money after liability became clear, and actions that were, in the end, “unreasonable and made in bad faith.” The judge properly characterized liability under §11. Within that framework, his findings were based on reasonableness. “A determination of reasonableness normally is a question of fact,” Kohl v. Silver Lake Motors, Inc., 369 Mass. 795, 799 (1976), and, as noted, will not be disturbed on appeal absent clear error, and we have found none.
Finally, upon the filing of a motion and affidavit by Hartunian’s counsel, the trial court later awarded the requested attorney’s fees and costs in the amount of $15,908.84. Pilgrim argued in the trial court that some of the work done by counsel was for the PIP claim, which resulted in a judgment for Pilgrim. As the issues in the PIP and related G.L.c. 93A claims are intertwined, as recognized in Fascione, supra at 95, work expended on the first claim necessarily involved work on the second, and vice versa. Pilgrim also questions the arithmetic in the calculation of fees based upon the application of Hartunian’s attorneys’ respective rates to the hours they spent on the matter. Such application, however, is ultimately determined by the judge. The court issued no written findings on the fee award, and none were requested by Pilgrim. Nor does the record appendix include the transcript of a hearing on the matter, or indicate whether such a hearing was held. On the state of the record, we must assume that the trial judge considered the factors for fee setting established by Linthicum v. Archambault, 379 Mass. 381, 388-389 (1979), and made the award in accordance with his sound discretion, of which we find no abuse.
Judgment affirmed.
So ordered.

 Hartunian also included a count alleging restraint of trade in violation of G.L.c. 93, §12. But having heard no evidence on that count, the judge dismissed it.

 Despite the IME, Pilgrim made a partial payment in May, 2008 in reliance upon Boone v. Commerce Ins. Co., 68 Mass. App. Ct. 354 (2007). In Boone, the Appeals Court interpreted G.L.c. 90, §34M to require that an IME be performed by a “practitioner registered or licensed under the same section of [G.L.c. 112] as the practitioner who submitted the bill for medical services.” Id. at 355. Although the services rendered to Sneed consisted of physical therapy, Hartunian is an orthopedic surgeon. Since the IME was done by a physical therapist rather than a medical doctor like Hartunian, Pilgrim, on the authority of the Appeals Court opinion, determined that the IME could not be used to deny Hartunian’s PIP claim and thus opted to make partial payment. Once that position was proved wrong when the Appeals Court, on April 17, 2008, was reversed, 451 Mass. 192 (2008), Pilgrim relied on the IME to refuse further payments.

 Pilgrim’s claims representative herself had some difficulty describing exactly what Med Data was and what it did. She testified, “Generally it — the facts of the bill are the numbers, the dates of service, the CPT codes, diagnosis codes are put in the Med Data system and Med Data based on the American Medical Association and other resources I’m not sure, determines whether the — based on the diagnosis codes and the CPT codes whether the treatment is being billed at the proper amount.” There is little wonder the trial judge could not make much sense of it either.

 Sections 3(9) (b), (d), (e), (g), and (n) of G.L.c. 176D state:
(9) Unfair claim settlement practices: An unfair claim settlement practice shall consist of any of the following acts or omissions:
(b) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;
(d) Refusing to pay claims without conducting a reasonable investigation based upon all available information;
(e) Failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed;
(g) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds;
(n) Failing to provide promptly a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.

 General Laws c. 93A, §9(1) states, in relevant part: “[A]ny person whose rights are affected by another person violating the provisions of [G.L.c. 176D, §3 (9) ] may bring an action... for damages....” Section 11 of G.Lc. 93A has no comparable provision.