Coven, J.
In this appeal, we consider whether summary judgment properly entered for the defendant, Amica Mutual Insurance Company (“Arnica”), on claims brought by the plaintiff, Emerson Hospital (“Emerson”), which are based on the failure of Arnica to pay Emerson personal injury protection (“PIP”) benefits pursuant to its rights under G.L.c. 90, §34M for medical services it provided to Arnica’s insured. We conclude that material issues of fact remain and reverse, except as to count 4 alleging a violation against the law prohibiting the restraint of trade and monopoly.[2]
Summary judgment is appropriate where the moving party demonstrates “that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.” Flesner v. Technical Communications Corp., 410 Mass. 805, 808-809 (1991), quoting Madsen v. Erwin, 395 Mass. 715, 719 (1985). See Mass. R. Civ. P, Rule 56(c). We view the evidence in the light most favorable to Emerson. Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117, 120 (1991).
Katherine Young (“Young”) was transported by ambulance to Emerson on *59 October 12, 2006, following an alleged motor vehicle accident. Emerson sought the recovery of $1,749.18 from Arnica.[3] This amount represented the aggregate charges for pharmacy ($3.00), radiology ($1,363.78), and emergency room expenses ($295.49). The fee also included the cost of a cervical collar ($86.91). Arnica informed Emerson that payment was denied because no PIP claim was on file.
According to a Telephone Loss Report, a person identified as “L.A. Clayton (Signif. Other),” in the early evening hours of October 13,2006, informed Arnica’s report taker that Young had been involved in a motor vehicle accident in Concord, MA, the prior day at 3:15 A.M. Clayton informed Arnica’s representative that Young was the operator of a vehicle that had hydroplaned and hit a barrier. Clayton informed the report taker that Young suffered head and neck injuries and was treated at Emerson. According to the report, Arnica was informed that Young “just wanted a PIP claim for medical and ambulance costs to be opened and rental coverage].” There is a note in the report that the “State Police did respond but no citation [] [was] given and no report [was] taken. Concord Barricks [sic].” The report taker indicates that Young’s home address was verified and the best telephone number to reach Young was identified. The report lists the home address of Young as 457 Summer St., Arlington, MA 02474. Yet it also has listed 343 Fresh Pond Pkwy, Cambridge, MA 02138, as Young’s residence at which the vehicle could be viewed. The vehicle involved is identified as a 1995 Chevrolet Monte Carlo and classified as a ‘Total Loss.”
Arnica sent three letters to Young addressed to the Arlington address noted. The last letter, dated December 22,2006, was returned with a notation “Katherine Young not at this address.” The content of this letter was to call attention to Young that Arnica had not yet received a PIP application, HIPAA form, or a health benefit affidavit.[4] Following the receipt of this returned letter, Arnica’s adjuster contacted the Massachusetts registry of motor vehicles and obtained two other addresses, one which identified her mailing address as 80 Gilbert Road, Belmont, MA, and the other listing her residential address as 150 Princeton Ave., Waltham, MA. A letter was sent to Young at her residential address on January 8,2007. It was returned with the following note added: “not @ this address.” According to Judith E. Bolen, an adjuster for Arnica who filed an affidavit in support of Arnica’s summary judgment motion, the initial adjuster, on January 31,2007, then called a telephone number and spoke with Young and verified Young’s address as 180 Gilbert Rd., Belmont, MA. The adjuster learned from Young that she did not receive any treatment other than that which was administered in the emergency room. The adjuster informed Young that a new PIP application would be sent. On the same date, a letter was sent, but it was sent to 80 Gilbert Road, Belmont, MA, not 180 Gilbert Road.
On November 21, 2006, during the period of attempts to contact Young, Arnica *60 received a medical record and itemized bill, as above described, from Emerson.[5] The medical record described the circumstances of Young’s admission to the emergency room, i.e., a motor vehicle accident. It also described the course of examination, i.e., a physical exam, X-rays of both the cervical spine and chest, and medication administered. The medical report indicates that Young was diagnosed with a neck strain as a result of the reported motor vehicle accident.
Emerson sought the collection of its receivable account for Young through Claim Assist, The Outsource Group, and Accelerated Receivables Management Solutions, LLC. The summary judgment record indicates that Arnica responded to all attempts to collect the amount claimed. In all responses, the first occurring on December 22, 2006, Arnica informed the collection entity that no PIP application had been received from Young, and in some of responses, Arnica added that it had not received HIPAA forms or a health benefit affidavit. Arnica’s final response, dated October 17, 2012, listed the failure of Young to file a PIP application as the reason for nonpayment of Emerson’s charges.
Apart from the bill submitted by Emerson, Arnica received on February 7,2008 a bill from the Concord fire department. Presumably, this bill represented the charge for the transport of Young to Emerson following the accident. The amount of the bill is not disclosed in the record.
The record does not contain a copy of the PIP application, the HIPAA form, or the health benefit affidavit sent to Young.
Arnica argues that the entry of summary judgment was proper because (1) Young did not file a PIP application, (2) Emerson’s submission of the bill and medical report does not qualify as a proper presentation of a PIP claim, and (3) the failure of Young to cooperate provided a basis upon which, as matter of law, Arnica could deny the PIP claim because of the prejudice incurred as a result of Young’s failure to complete and return the information requested through the PIP application, HIPAA form, and health benefit affidavit
The failure of Young to submit a PIP application does not, as matter of law, excuse Arnica from its PIP obligation. General Laws c. 90, §34M, in part, requires that a claim for PIP benefits “shall be presented to the company providing such benefits... within at least two years from the date of accident, and shall include a written description of the nature and extent of injuries sustained, treatment received and contemplated and such other information as may assist in determining the amount due and payable.” It is Arnica’s position that because Young has never presented it with a PIP application and more than two years have passed since the date of accident, it need not show any prejudice and, as matter of law, Emerson’s claim was properly denied.
Arnica’s position is based on a misreading of Northshore Chiropractic v. Commerce Ins. Co., 2010 Mass. App. Div. 168. Arnica takes the position that the proper focus is solely on the action of Young in not submitting a PIP claim. Northshore Chiropractic does not stand for the proposition that a PIP claim can be initiated only by an injured insured and the failure of that individual to file a PIP claim is fatal to the recovery of PIP benefits by a medical provider. In Northshore Chiropractic, the actions of both *61 the injured insured and those of Northshore Chiropractic were examined. This Division concluded that the evidence demonstrated that the injured insured filed no PIP application and that Northshore Chiropractic’s failure to file a PIP claim with sufficient information within the two-year period constituted a defense without the need of Commerce to prove prejudice. Id. at 170-171.[6]
In this case, Emerson submitted an itemized bill listing five charges and a medical report. The report indicated that medicine was administered and X-rays were taken of Young in the course of emergency treatment following a motor vehicle accident. “Section 34M does not specify how a claim is to be presented, but only what information must be given.” Salafia v. CNA Ins. Cos., 2001 Mass. App. Div. 8, 10. At least as to the first part of the §34M test, i.e., submission of a “written description of the nature and extent of injuries sustained, treatment received and contemplated,” a material fact of issue exists.
Arnica suggests that this information was deficient because it failed to include specific facts about the accident and did not establish a causal connection between the alleged damages and the motor vehicle accident for which PIP benefits were sought. Additionally, Arnica asserts that it did not contain a HIPAA medical release form, which would allow Arnica to determine if Young suffered from any preexisting conditions that may have affected PIP coverage. It is also argued that Arnica is prejudiced by Emerson’s submission, if found permissible, because it has been denied the opportunity to consider whether Young was under the influence of alcohol, marijuana or narcotics, was committing a felony or was seeking to avoid arrest by police, operated the motor vehicle with a specific intent to cause injury,[7] or had available other insurance that would cover the expenses incurred.[8] These same arguments are raised in Arnica’s position that Young’s failure to cooperate in submitting a PIP *62 claim, HIPAA release form, and health insurance affidavit established a prejudice to Arnica that allowed it to deny coverage. At a basic level, Arnica lays fault in it not having been presented with “such other information as may assist in determining the amount due and payable,” the second part of the §34M standard governing the presentation of a PIP claim.
Taking the intertwined relationship between Emerson and Young as it relates to PIP coverage, we begin with the observation that nothing was requested by Arnica from Emerson apparently because of the error in its belief that only an injured insured can initiate a PIP benefit claim. Equally, at the time Emerson sought payment, Arnica had received only that bill for processing under the PIP benefits provided by the policy and its total was less than $2,000.00. Accordingly, pursuant to the coordination of benefits mandate of G.L.c. 90, §34A, Arnica, even if insurance other than that provided by a workers’ compensation policy were available, would be responsible for the full payment.[9]
Emerson could be found to have presented a written description of its claim. Arnica did not request that Emerson provide additional evidence, admission records indicating the availability or lack thereof of other health insurance, or releases in order to evaluate Emerson’s claim. Additionally, to the extent that Emerson has the burden of proof at trial that coverage existed, Excel Physical Therapy, Inc. v. Commerce Ins. Co., 2011 Mass. App. Div. 63, 65 & n.6, and that burden is influenced by Young’s cooperation with Arnica, material issues of fact remain. Cooperation is measured not only by what an insured did or failed to do, but the issue is also measured by what Arnica did or failed to do. Darcy v. Hartford Ins. Co., 407 Mass. 481, 491 (1990). In this case, although Arnica forwarded to Young forms through which their completion would provide Arnica information from which it could determine coverage issues, the addresses to which the correspondence was sent appear not to have been the correct addresses. Young appears to have not been provided an opportunity to cooperate with the request of Arnica or to file an application that was appropriately provided.[10]
The allowance of defendant’s motion for summary judgment is reversed, and the matter is returned for trial.
So ordered.

 Emerson has not briefed the issue of the propriety of summary judgment entering under the count for restraint of trade, and the claim is thereby waived. With regard to counts 2 and 3 alleging claims brought pursuant to G.L.c. 93A, we agree with Arnica that, unlike a claim brought under G.L.c. 93A, §9, G.Lc. 93A, §11 does not create a private right of action based upon a violation of unfair insurance claim settlement practices declared unlawful in G.L.c. 176D, §3(9). However, Arnica overlooks that a judge may rely upon a violation of the practices declared unlawful in determining whether, in the context of a business-to-business transaction, an unfair practice occurred. Northern Sec. Ins. Co., Inc. v. R.H. Realty Trust, 78 Mass. App. Ct. 691, 696 n.12 (2011); Byron V. Hartunian, M.D., P.C. v. Pilgrim Ins. Co., 2012 Mass. App. Div. 208, 212-213. We therefore decline to affirm summary judgment on counts 2 and 3.

 The amount sought from Arnica was later reduced to $1,257.12. The reason for the reduction is not evident from the summary judgment record.

 We understand from the argument presented that the HIPAA form would allow Arnica to gain access to Young’s medical records and the health benefit affidavit would allow Arnica to determine whether other insurance was available. As we note, infra, the forms are not provided and, therefore, we do not know what information would have been captured through the completed forms.

 The itemized bill lists 17 Starbird St., Malden, MA as Young’s address.

 In Northshore Chiropractic, supra, there was an assignment of the PIP benefits rights of the injured insured to Northshore Chiropractic. Id. at 168. In this case, Emerson is proceeding under its independent right as a party who remains unpaid for benefits due and payable and is “deemed a party” to the insurance contract between Arnica and its injured insured that provides for PIP benefits. G.L.c. 90, §34M.

 Arnica makes these assertions even though the evidence is that the State police responded to the scene of the accident and did not issue a citation to Young. In applying the proper standard, we draw the inference that the State police found no evidence suggesting that Young was under the influence of alcohol, marijuana, or narcotics, was committing a felony or was seeking to avoid arrest by police, or operated the motor vehicle with a specific intent to cause injury at the time of the accident.

 General Laws c. 90, §34A defines the term “personal injury protection” as a benefit of a motor vehicle liability policy payable to an injured insured (and others) “unless any of the aforesaid is a person entitled to payments or benefits under” the Workers’ Compensation Act of G.L.c. 152. Section 34A also allows for the exclusion of benefits if an injured insured was operating a motor vehicle “(1) while under the influence of alcohol or a narcotic drug ...; (2) while committing a felony or seeking to avoid lawful apprehension or arrest by a police officer; or (3) with the specific intent of causing injury or damage to himself or others.”

 Generally stated, G.L.c. 90, §34A requires that following an accident the first $2,000.00 in benefits are to be paid by the PIP insurer with benefits above that threshold being payable by health insurance. After the $2,000.00 threshold has been reached, any expenses not covered by a health insurer are payable by the PIP insurer until the payments erode the insurer’s $8,000.00 limit of PIP liability. Advanced Spine Ctrs., Inc. v. Commerce Ins. Co., 2011 Mass. App. Div. 91, 92 n.4.

 Emerson’s request for appellate attorney’s fees is denied. Although G.L.c. 90, §34M provides for an award of such fees to Emerson, the award is conditioned on Emerson prevailing in its claim for unpaid services.